Shaun Peterson #298007
Name and Prisoner/Booking Number

Eyman Complex/Meadows Unit
Place of Confinement

PO Box 3300
Mailing Address

Florence, Arizona 85132
City, State, Zip Code

**(Failure to notify the Court of your change of address may result in dismissal of this action.)**

| FILED | ☐ LODGED |

☒ FILED   ☐ LODGED

# Mar 08 2022

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ARIZONA

Shaun Andrew Peterson ,
(Full Name of Plaintiff)

Plaintiff,

v.

(1) David Shinn ,
(Full Name of Defendant)

(2) and others ,

(3) _____ ,

(4) _____ ,

Defendant(s).

☑ Check if there are additional Defendants and attach page 1-A listing them.

CASE NO. CV-22-00042-PHX-GMS(MTM)
(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT**
**BY A PRISONER**

Jury Trial Demanded

☐ Original Complaint
☑ First Amended Complaint
☐ Second Amended Complaint

### A.  JURISDICTION

1. This Court has jurisdiction over this action pursuant to:
   ☑ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
   ☐ 28 U.S.C. § 1331; *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).
   ☐ Other: _____.

2. Institution/city where violation occurred: Meadows Unit/Florence

**550/555**

1. Defendants
2. (1) David Shinn
3. (2) Walter Hensley
4. (3) (unknown) Stickley
5. (4) John Doe #1 (ADW)
6. (5) John Doe #2 (FHA)
7. (6) John Doe #3 (DON)
8. (7) John Doe #4 (ADON)
9. (8) Maureen Gay
10. (9) John Doe #5 (REF)
11. (10) Angel Merriman
12. (11) H. Dison
13.
14.
15.
16.
17.
18.
19.
20.
21.
22.
23.
24.
25.
26.
27.

## B.  DEFENDANTS

1.  Name of first Defendant: _David Shinn_____. The first Defendant is employed
as: _Director_____ at _ADCRR_____.
     (Position and Title)          (Institution)

2.  Name of second Defendant: _Walter Hensley_____. The second Defendant is employed as:
as: _Warden_____ at _Eyman Complex_____.
     (Position and Title)          (Institution)

3.  Name of third Defendant: _(unknown) Stickley_____. The third Defendant is employed
as: _Deputy Warden_____ at _Special Management Unit 1_.
     (Position and Title)          (Institution)

4.  Name of fourth Defendant: _Doe #1_____. The fourth Defendant is employed
as: _Assistant Deputy Warden_____ at _Special Management Unit 1_.
     (Position and Title)          (Institution)

**If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.**

## C.  PREVIOUS LAWSUITS

1.  Have you filed any other lawsuits while you were a prisoner?      ☐ Yes    ☑ No

2.  If yes, how many lawsuits have you filed? _____. Describe the previous lawsuits:

    a.  First prior lawsuit:
        1.  Parties: _____ v. _____
        2.  Court and case number: _____.
        3.  Result: (Was the case dismissed? Was it appealed? Is it still pending?)_____
            _____.

    b.  Second prior lawsuit:
        1.  Parties: _____ v. _____
        2.  Court and case number: _____.
        3.  Result: (Was the case dismissed? Was it appealed? Is it still pending?)_____
            _____.

    c.  Third prior lawsuit:
        1.  Parties: _____ v. _____
        2.  Court and case number: _____.
        3.  Result: (Was the case dismissed? Was it appealed? Is it still pending?)_____
            _____.

**If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.**

2

1. B. DEFENDANTS

2. 5. John Doe #2 (FHA)        ; employed as: Facility Health

3. Administrator                at: Special Management Unit 1

4. 6. John Doe #3 (DON)        ; employed as: Director of

5. Nursing                     at: Special Management Unit 1

6. 7. John Doe #4 (ADON)       ; employed as: Assistant Director of

7. Nursing                     at: Special Management Unit 1

8. 8. Maureen Gay              ; employed as: Medical Provider/Staff

9.                             at: Special Management Unit 1

10. (9) John Doe #5 (REF)       ; employed as: Correctional Officer II

11.                             at: Special Management Unit 1

12. (10) Angel Merriman         ; employed as: Medical Provider/Staff

13.                             at: Special Management Unit 1

14. (11) H. Dison              ; employed as: Correctional Officer IV

15.                             at: Special Management Unit 1

16.

17.

18.

19.

20.

21.

22.

23.

24.

25.

26.

27.

## D. CAUSE OF ACTION

### COUNT I

1. State the constitutional or other federal civil right that was violated: Denial of medical care in violation of Eighth Amendment

2. **Count I.** Identify the issue involved. Check **only one.** State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Disciplinary proceedings
   - ☐ Excessive force by an officer
   - ☐ Mail
   - ☐ Property
   - ☐ Threat to safety
   - ☐ Access to the court
   - ☐ Exercise of religion
   - ☐ Other: _____
   - ☒ Medical care
   - ☐ Retaliation

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count I. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   1. On or about March 15, 2015, Plaintiff was transferred to Special Management Unit 1 (SMU1)
   2. The medical department was provided documentation through medical records of Plaintiff's diagnosis of glaucoma and optic neuropathy (since 1990).
   3. On February 29, 2016 this was confirmed by ADOC's own eye specialist.
   4. On October 18, 2018, Plaintiff requested assignment to bottom bunk subsequent to a fall from a top bunk. This Health Needs Request was not processed until 299 days later in violation of policy. This responsibility for processing HNR's falls to Defendants Doe #3, the Director of Nursing and Doe #4, the Assistant Director of Nursing, as supervisors.
   5. Between November 1, 2018 and April 2019, Plaintiff's eye medication was repeatedly not refilled. He submitted numerous HNR's requesting refill. These HNR's were ignored. By the end of April, 2019 the lack of eye medication resulted in an infection setting in.
   6. On or about April 1, 2019 Plaintiff submitted HNR #2 requesting to be seen for the eye infection. Instead of being taken to medical for the eye infection,

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   The actions or inactions of the Defendants that caused or proximately caused the loss of sight are described in heightened detail per this Court's order filed March 1, 2022 in pages 4-A through 4QQ.

5. **Administrative Remedies:**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes ☐ No
   b. Did you submit a request for administrative relief on Count I? ☒ Yes ☐ No
   c. Did you appeal your request for relief on Count I to the highest level? ☒ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

3

1  Defendant Officer Doe #5 signed a Refusal of Medical treatment
2  form fraudulently without ever consulting with Plaintiff to verify
3  he wanted to refuse medical treatment.
4      7. Due to this, Plaintiff was not seen for his eye infection
5  at that time. The infection was allowed to run rampant, causing
6  much additional pain and suffering, until his optic nerve
7  "exploded".
8      8. Defendant Officer Doe #5 delayed the necessary medical
9  treatment Plaintiff needed and as a result of his willful,
10  and deliberate indifferent actions Plaintiff was rendered blind
11  on or about May, 2019.
12     9. Between May, 2019 and February, 2021, Plaintiff
13  submitted no fewer than 18 Health Needs Requests to
14  alleviate his pain and suffering. None were triaged and
15  processed according to policy timeframes, prolonging
16  Plaintiff's immense pain and suffering.
17     10. The responsibility for responding to those HNR's
18  in a timely manner falls to Defendants Maureen Gay
19  and Angel Merriman. Most of those HNR's were requesting
20  his prescribed medications, which were withheld by these
21  two defendants.
22     11. The responsibility for tracking responses to HNR's
23  and verifying the continuous supply of prescribed medication
24  without interruption falls to Defendants John Doe #2, #3, #4.
25  They each failed to Maintain a system for ensuring that
26  Plaintiff's Health Needs Requests were responded to in a timely
27  and reasonable manner and that his medications were

(3-A)

supplied in an uninterrupted manner. These failures caused
Plaintiff much additional pain and suffering and further
damage to his eyes.

12. On August 6, 2019; September 9, 2019; October 4, 2019;
October 6, 2019; and November 6, 2019 Plaintiff alerted prison
officials of the repeated denials and delays of medical care
for his serious medical needs through Inmate Letters, Informal
Complaints, Grievances, and Grievance Appeals. Instead of addressing
Plaintiff's medical issues, prison officials repeatedly "unprocessed" his
notifications to them for minor technical errors even though Plaintiff
was, by then, almost completely blind and could not read grievance
procedures well enough to do much more than alert them to the
problems he was facing.

13. The responsibility for responding to the documents listed
in item 12 falls to Walter Hensley, (unknown) Stickley, John Does #1, #2,
#3, #4 and H. Dison. Their failures to reasonably respond to
these various methods of notification caused Plaintiff much
additional pain and suffering and further damage to his eyes.

14. On July 12, 2019 Plaintiff submitted a letter to Prison
Law Office, who soon after filed a Parsons v Ryan
medical complaint. This alerted John Doe #1, (unknown) Stickley,
Walter Hensley, and David Shinn of the ongoing medical deficiency.
None responded and provided relief for Plaintiff's pain and
suffering.

15. Due to the Defendants named in item 14's failure to
reasonably respond, Plaintiff suffered much additional pain
and damage to his eyes.

(3-B)

CV-22-00042-PHX-GMS (MTM)

1  Supervisory Liability for the Denial of Medical Care

2      Defendant Shinn holds the supervisory position of Director,
3  ADCRR. His personal responsibilities include the administrative
4  oversight and provision of constitutionally adequate healthcare
5  for Arizona's prisoners. Estelle v Gamble, 429 U.S. 97, 97 S.Ct.
6  285 (1976); U.S.CA.8. He does this by personally
7  contracting professional services to assist in carrying out
8  this responsibility on behalf of the state. Ariz. Rev. Stat.
9  31-201.01(D). In spite of the presence of contracted
10  professionals, he alone is ultimately responsible to
11  ensure their work is constitutionally adequate (Estelle)
12  through his own culpable action or inaction in the
13  training, supervision, or control of subordinates, his
14  acquiescence in the constitutional deprivation of which
15  a complaint is made or for conduct that showed a
16  reckless or callous indifference to the rights of others
17  (citation omitted) City of Canton v Harris, 489 U.S. 378,
18  385, 109 S.Ct. 1197 (1989); see also Edgerly v City and
19  County of San Francisco, 495 F.3d 645, 660 (9th Cir. 2007)
20      Defendant Shinn personally meets with his subordinates
21  and representatives of the healthcare services contractor(s) who
22  report deficiencies and areas of concern in ADCRR's
23  healthcare system. He then established policies and
24  directives to address these deficiencies, and is
25  responsible for affirmatively supervising his subordinates
26  as they supervise and train their subordinates to implement
27  those policies and directives in a manner that achieves

Shinn  **4-A**

CV-22-00042-PHX-GMS(MTM)

the desired result of constitutionally adequate healthcare.

This prison's current history has been documented and expressly noted as a pattern and practice by officials to deny adequate medical care in violation of prisoners' Eighth Amendment rights and then to obstruct, silence, or "chill" prisoners' First Amendment right to file grievances about that constitutionally deficient healthcare through retaliatory actions.

These are not isolated occurrences. They are long-standing and pervasive, deliberate and conscious choices to inflict wanton and unnecessary pain.

Defendant Shinn has known of and disregarded the excessive risk to the health of prisoners posed by the presence of the three above-mentioned violations through more than a decade of litigation and failures of ADCRR to meet court-ordered stipulations in Parsons v Ryan, CV-12-00601-PHX-ROS (now Jen v Shinn), an ADC prisoner class-action concerning the provision of medical care in ADCRR prisons. His knowledge by inference supported by Farmer v Brennan, 511 U.S. 825 (1994) as these very same issues have been repeatedly highlighted as "long-standing, pervasive, well-documented and expressly noted" as "so likely to result (continue to) in violations of constitutional rights that defendants can reasonably be said to the need" if they continue by past administrations and courts. This satisfies the supervisory liability and deliberate indifference requirements under Farmer v Brennan and Blyden v Mancusi, 186 F.3d 252, 264 (2d Cir. 1999) (a supervisor may be

Shinn (4-B)

CV-22-00042-PHX-GMS (MTM)

found personally involved in a deprivation of rights in several ways... He may be liable because he created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue... He, after learning of the violation through a report or appeal may have failed to remedy the wrong...)

Additionally, for the supervisory liability standard, Plaintiff alleges that Defendant Shinn's own actions of continuing to pay healthcare contractor who has never been in constitutional compliance since assuming the contract many years ago fulfills all three liability stipulations of City of Canton v Harris. His culpable action is paying hundreds of millions of dollars for deficient healthcare while are fined only tens of Millions for their deficiencies. This is acquiescence of the sort that fulfills both deliberate indifference and supervisory liability standards. His inaction is in failing to properly train, supervise and control his subordinates to ensure they properly implement methods to meet court-ordered standards of medical care for Arizona's prisoners.

Plaintiff alleges that Defendant Shinn, instead of using taxpayer money to institute effective programs of "checks and balances" to eliminate the unconstitutional deficiencies in ADCRR's healthcare system, Defendant Shinn has made a series of deliberate and conscious choices to continue to pay the legal fees and fines for the substandard healthcare he provides. This establishes an affirmative link between his deliberate and conscious choices and

Shinn **4.c**

CV-22-00042-PHX-GMS (MTM)

1 the wanton and unnecessary infliction of pain suffered by
2 Plaintiff.
3    Plaintiff further alleges that, in light of the duties assigned
4 to Defendant Shinn, more than 10 years of long-standing and
5 expressly noted failures in the ADCRR medical care system and
6 the grievance system, and widespread failure to control
7 retaliatory conduct of subordinates has made the need for
8 more and different training and supervision and control obvious
9 and the continuation of these inadequacies so likely to result
10 in violations of constitutional rights that Defendant Shinn can
11 reasonably be said to have been indifferent to the need.
12 City of Canton v Harris.
13    Plaintiff alleges that Defendant Shinn knew of the healthcare
14 deficiencies, knew they would be grieved, knew from numerous
15 Parsons v Ryan report they would likely be "unprocessed" in violation of
16 DO 802.5.2.1 - 802.5.2.2.5 which allows only for a designation
17 of either "resolved" or "not resolved", in an effort to cut off the
18 complaints from reaching upper management and the ADCRR compliance
19 monitor, and yet he failed to remedy these wrongs.
20    Plaintiff alleges that Defendant Shinn, in not properly training,
21 supervising or controlling subordinates in the proper processing of
22 grievances actually allowed Plaintiff's cries for help for medical
23 care to purposefully go unanswered for so long he lost his
24 sight.
25    Plaintiff alleges these were deliberate and conscious choices
26 by the Director and sufficiently states a claim for relief for
27 supervisory liability for the denial of Medical Care due deliberate indifference.

Shinn

4-D

CV-22-00042-PHX-GMS (MTM)

Discovery will be necessary to ascertain the extent of this Defendant's liability. This is supported by Matzker v Herr, 748 F.2d 1142, 1147-48 (7th Cir, 1984) (jail officials liable for holding prisoner for 3 months but refused to provide treatment for injured eye); see also Satchell v Dilworth, 745 F.2d 781, 786 (2d Cir 1984) (supervisors can be named as parties "at least for purposes of identifying those of their subordinates who are personally responsible for the departmental actions complained of); Harvey v LaValley, 2009 WL 5219027, *3 (N.D.N.Y., Dec 31, 2009). (restating rule permitting inclusion of supervisors as named defendants for discovery purposes after Iqbal.)

Finally, it has been held; "after Iqbal and Twombly, court assessing sufficiency of complaint should ask: if all facts plaintiff alleges in his complaint are accepted as true, but all conclusions are rejected, is it still plausible (that is, more than speculative) to believe that additional discovery will fill in whatever gaps are left in the complaint ?" Riley v Vilsack, 665 F. Supp. 2d 994, 2009 U.S. Dist. LEXIS 98548 (W.D. Wis. 2009). The answer is, yes, it is plausible that the defendant has failed in his supervisory duties to correct the same deficiencies of the last 10 years that plaintiff alleges still exist and led to his loss of sight, and yes, additional discovery would fill in the gaps left in this complaint.

CV-22-00042-PHX-GMS(MTM)

## Supervisory Liability for the Denial of Medical Care

Defendant Hensley holds the supervisory position of warden for Eyman Complex. His personal responsibilities include the administrative oversight of Eyman Complex operations and the oversight and provision of constitutionally adequate healthcare for Eyman Complex's prisoners. _Estelle v. Gamble_, 429 U.S. 97, 97 S.Ct. 285 (1976); U.S.C.A. 8.

He does this by personally meeting with his subordinates and representatives of the contracted healthcare provider services who report deficiencies and areas of concern that adversely affect the provision of constitutionally adequate healthcare to Eyman Complex's prisoners. He investigates the accuracy of these reports and provides them directly to the director, ADCRR.

Defendant Hensley as warden, receives the director's orders and formulates policy and directives to his subordinates, including representatives of the healthcare provider services. As warden, in spite of the presence of the contracted professionals, he is liable for ensuring their work at Eyman Complex is constitutionally adequate (Estelle) through his own culpable action or inaction in the training, supervision or control of subordinates, his acquiescence in the constitutional deprivation of which a complaint is made or for conduct that showed a reckless or callous indifference to the rights of others (citation omitted). _City of Canton v. Harris_, 489 U.S. 378, 385, 109 S.Ct. 1197 (1989); See also _Edgerly v. City and County of San Francisco_, 495 F.3d 645, 660 (9th Cir 2007).

Defendant Hensley warden has failed in his responsibilities

CV-22-00042-PHX-GMS (MTM)

to affirmatively supervise his subordinates as they supervise and train
their subordinates to implement those policies and directives in a
manner that achieves the desired result of constitutionally adequate
healthcare.

Eyman Complex's current history has been documented and expressly
noted as a pattern and practice by officials to deny medical care
in violation of prisoners' Eighth Amendment rights and then to
obstruct, silence, or "chill" prisoners' First Amendment right to file
grievances about that constitutionally deficient healthcare through
retaliatory actions.

Plaintiff alleges that these are not isolated occurrances. They are
long-standing and pervasive, deliberate and conscious choices
to inflict wanton and unnecessary pain.

Plaintiff alleges that Defendant Hensley has known of and
disregarded the excessive risk to the health of prisoners posed by
the prescence of the three above-mentioned violations through
more than a decade of litigation and failures of Eyman Complex
to meet court-ordered stipulations in Parsons v Ryan, CV-12-00601
PHX-Ros, an ADC prisoner class-action concerning the provision of
medical care in ADCRR prisons. His knowledge by inference is
supported by Farmer v Brennan, 511 U.S. 825 (1994) as these
very same issues have been repeatedly highlighted as "long-
standing, pervasive, well-documented and expressly noted" as "so
likely to result in violations of constitutional rights that defendants
can reasonably be said to be indifferent to the needs" by past
administrations and courts.

This satisfies the supervisory liability and deliberate

warden    4-G

CV-22-00042-PHX-GMS (MTM)

indifference requirements under Farmer v Brennan and Blyden v Mancusi, 186 F.3d 252, 264 (2d Cir. 1999)(a supervisor may be found personally involved in a deprivation of rights in several ways... He may be liable because he created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue... He, after learning of the violation through a report or appeal may have failed to remedy the wrong...) Plaintiff alleges that Defendant Hensley knew of the healthcare deficiencies, knew they would be grieved, and knew from numerous Parsons v Ryan reports they would likely be "unprocessed" in violation of DO 802.5.2.1-802.5.2.2.5 which allows only for a designation of either "resolved" or "not resolved", in an effort to cut off the complaints from reaching upper management and the ADCRR compliance monitor, and yet he failed to remedy these wrongs.

Plaintiff alleges that Defendant Hensley, in not properly training supervising, or controlling subordinates in the proper processing of grievances, actually allowed Plaintiff cries for help for medical care to purposefully go unanswered in an effort to avoid oversight of the ADCRR compliance monitor and the courts. The result is that plaintiff's cries for help went unanswered for so long he lost his sight.

Plaintiff alleges this was a deliberate and conscious choice by the warden and sufficiently states a claim for supervisory liability for the denial of medical care due to deliberate indifference.

Discovery will be necessary to ascertain the extent of this
warden                    (4-H

CV-22-00042-PHX-GMS (MTM)

Defendant's liability. This is supported by <u>Matzker v. Herr</u>, 748 F. 2d 1142, 1147-48 (7th Cir. 1984) (jail officials liable for holding prisoner for 3 months but refused to provide treatment for injured eye); see also <u>Satchell v Dilworth</u>, 745 F. 2d 781, 786 (2d Cir 1984) (supervisors can be named as parties "at least for purposes of identifying those of their subordinates who are personally responsible for the departmental actions complained of); <u>Harvey v. LaValley</u>, 2009 WL 5219027, *3 (N.D.N.Y., Dec. 31, 2009) (restating rule permitting inclusion of supervisors as named defendants for discovery purposes after <u>Iqbal</u>.

Finally, it has been held; "After <u>Iqbal</u> and <u>Twombly</u>, court assessing sufficiency of complaint should ask: if all facts plaintiff alleges in his complaint are accepted as true, but all conclusions are rejected, is it still plausible (that is, more than speculative) to believe that additional discovery will fill in whatever gaps are left in the complaint? <u>Riley v Vilsack</u>, 665 F. Supp. 2d 994, 2009 U.S. Dist. LEXIS 98548 (W.D. Wis. 2009).

The answer is, yes, it is plausible that this defendant continued the same conduct of the last 10 years or, after learning of these deficiencies, failed to remedy the wrong, that the deficiencies still exist and cost Plaintiff his sight, and it is plausible that additional discovery will fill in the gaps in the complaint.

CV-22-00042-PHX-GMS(MTM)

## Supervisory Liability for the Denial of Medical Care

Defendant Stickley holds the supervisory position of deputy warden for Special Management Unit 1. His personal responsibilities include the direct oversight of provision of constitutionally adequate healthcare for Special Management Unit 1. Estelle v Gamble, 429 U.S. 97, 97 S. Ct. 285 (1976); U.S.C.A. 8.

He does this by personally meeting with the facility health administrator (FHA), director of nursing(DON), and Assistant Director of Nursing (ADON) who report deficiencies and areas of concern that adversely affect the provision of constitutionally adequate healthcare to SMU 2's prisoners. He investigates the accuracy of these reports and provides them to his supervisors.

Defendant Stickley as deputy warden receives the policies and directives from his superiors and assigns key personnel to handle the day-to-day duties entailed in the successful implementation of those decisions.

In spite of the presence of contracted healthcare professionals, he is liable for ensuring their work at SMU 1 is constitutionally adequate (Estelle) through his own culpable action or inaction in the training, supervision, or control of subordinates, his acquiescence in the constitutional deprivation of which a complaint is made or for conduct that showed a reckless or callous indifference to the rights of others (citation omitted). City of Canton v Harris, 489 U.S. 378, 385 109 S. Ct. 1197 (1988); see also Edgerly v City and County of San Francisco, 495 F.3d 645, 660 (9th Cir. 2007).

Defendant Stickley has failed in his responsibilities

DW

4-J

CV-22-00042-PHX-GMS (MTM)

1 to affirmatively supervise his subordinates as they supervise
2 and train their subordinates to implement policies and directives
3 in a manner that achieves the desired result of constitutionally
4 adequate healthcare.

5   This prison's current history has been documented and
6 expressly noted as a pattern and practice by officials to
7 deny medical care in violation of prisoners' Eighth
8 Amendment rights and then to obstruct, silence, or "chill"
9 prisoners' First Amendment right to file grievances about that
10 constitutionally deficient healthcare through retaliatory actions.
11   Plaintiff alleges that these are not isolated occurrances.
12 They are long-standing and pervasive, deliberate and conscious
13 choices to inflict wanton and unnecessary pain.
14   Plaintiff alleges that Defendant Stickley has known of
15 and disregarded the excessive risk to the health of prisoners
16 posed by the 3 above-mentioned violations through more than a
17 decade of litigation and failures of this prison to meet court-
18 ordered stipulations in Parsons v. Ryan, CV-12-00601-PHX-ROS, an
19 ADC prisoner class-action concerning the provision of medical care
20 in ADCRR prisons. His knowledge by inference is supported by
21 Farmer v Brennan, 511 U.S. 825 (1994) as these very same issues
22 have been repeatedly highlighted as "long-standing, pervasive,
23 well-documented and expressly noted" as "so likely to result
24 in violations of constitutional rights" that the defendant
25 "can reasonably be said to be indifferent to the need" for
26 more or different training. Less than 65 percent of medical
27 requests and grievances are processed according to policy,

DW    4-K

CV-22-00042-PHX-GMS (MTM)

and less than 5 percent of grievances are processed. Most are designated as "unprocessed" in violation of DO802.5.2.1-802.5. 2.5 which only allows for a designation of either "resolved" or "not resolved". In an effort to cut off the complaints from reaching upper management and the ADCRR compliance monitor, and yet he failed to remedy the wrongs. This satisfies the supervisory and deliberate indifference requirements under <u>Farmer v Brennan</u> and <u>Blyden v Mancusi</u>, 186 F.3d 252, 264 (2d Cir. 1999)(a supervisor may be found personally involved in a deprivation of rights in several ways,,, He may be liable because he created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue,,, He, after learning of the violation through a report or appeal may have failed to remedy the wrong,,,)

Plaintiff alleges that the deputy warden knew of the healthcare deficiencies, knew they would be grieved, and would likely be "unprocessed" from numerous <u>Parsons v Ryan</u> reports, and yet the defendant allowed this custom to continue and failed to remedy the wrong.

Plaintiff alleges that the defendant made a deliberate and conscious choice to not properly supervise or control subordinates in the proper processing of medical grievances to avoid oversight of his supervisors, the ADCRR compliance monitor, and the courts.

Plaintiff alleges that the defendant's deliberate and conscious choices actually allowed Plaintiff cries for help for medical care to purposefully go unanswered

DW

4-2

CV-22-00042-PHX-GMS (MTM)

1  for so long that it resulted in the loss of his sight,

2      Plaintiff alleges these deliberate and conscious choices
3  by the deputy warden sufficiently states a claim for
4  supervisory liability for the denial of medical care due
5  to deliberate indifference,

6      Discovery will be necessary to ascertain the extent of this
7  defendant's liability. This is supported by Matzker v Herr,
8  748 F.2d 1142, 1147-48 (7th Cir. 1984)(jail officials liable for
9  holding prisoner for 3 months but refused to provide treatment
10 for injured eye.); see also Satchell v Dilworth, 745 F.2d 781,
11 786 (2d Cir. 1984)(supervisors can be named as parties "at least
12 for purposes of identifying those of their subordinates who are
13 personally responsible for the departmental actions complained of);
14 Harvex v LaValley, 2009 WL 5219027, *3 (N.D.N.Y., Dec. 31, 2009)
15 (restating rule permitting inclusion of supervisors as named
16 defendants for discovery purposes after Iqbal,

17     Finally, it has been held; "After Iqbal and Twombly, court
18 assessing sufficiency of complaint should ask: if all facts
19 Plaintiff alleges in his complaint are accepted as true, but all
20 conclusions are rejected, is it still plausible (that is, more than
21 speculative) to believe that additional discovery will fill in
22 whatever gaps are left in the complaint?" Riley v Vilsack,
23 665 F.Supp.2d 994, 2009 U.S. Dist. LEXIS 98548 (W.D.Wis. 2009).

24     The answer is yes, it is plausible that the defendant failed
25 in his supervisory duties to correct the same unconstitutional
26 conditions of the last 10 years that Plaintiff alleges still exist and
27 cost him his sight, and it is plausible that additional

CV-22-00042-PHX-GMS (MTM)

1 | discovery will fill in whatever gaps are left in the
2 | complaint.
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

CV-22-00042-PHX-GMS (MTM)

Supervisory Liability for the Denial of Medical Care

Defendant John Doe #1 holds the supervisory position of Assistant Deputy Warden of Special Management Unit 1. His responsibilities include administrative oversight of provision of constitutionally adequate medical care to prisoners under his care and for the training, supervision and control of subordinates to ensure they are training their subordinates and supervising them to ensure they are eliminating known deficiencies in medical provision. The ADW meets with subordinates to implement strategies to eliminate those deficiencies (DO 100) for the provision of constitutionally adequate healthcare for prisoners. Estelle v Gamble, 429 U.S. 97, 97 S. Ct. 285 (1976); U.S. CA. 8.

In spite of the presence of contracted healthcare professionals the ADW is liable for ensuring that their work is constitutionally adequate (Estelle) through his own culpable action or inaction in the training, supervision, or control of subordinates, his acquiescence in the constitutional deprivation of which a complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others (citation omitted). City of Canton v Harris, 489 U.S. 378, 389 109 S. Ct. 1197 (1989); see also Edgerly v City and County of San Francisco, 495 F.3d 645, 660 (9th Cir. 2007).

Defendant Doe #1 failed in his responsibilities to affirmatively supervise his subordinates as they supervised and trained their subordinates to ensure provision of constitutionally adequate medical care. As ADW, he

ADW

CV-22-00042-PHX-GMS (MTM)

1 was not aware and should have been aware, or allowed
2 a custom that medical and grievance staff were not processing
3 HNR's, medical complaints, and Emergency Grievances (medical)
4 as required by DO 802; DO 1100, and that staff were not trained
5 in such. Inglead, these grievances were "unprocessed" in
6 violation of DO 802.5.2.1-802.5.2.25, which only allows for
7 a designation of either "resolved" or "unresolved". This
8 "unprocessing" is done in an effort to cut off the complaints
9 from reaching upper management and the ADCRR compliance
10 monitor.
11     This prison's current history has been docucumented and
12 expressly noted as a pattern and practice by officials to deny
13 medical care in violation of prisoners' Eighth Amendment rights
14 and then to obstruct, silence or "chill" prisoners' First Amendment
15 rights to file grievances about that constitutionally deficient
16 healthcare through retaliatory actions.
17     Plaintiff alleges that these are not isolated occurrances. They
18 are long-standing and pervasive, deliberate and conscious
19 choices to inflict wanton and unnecessary pain.
20     Plaintiff alleges that the Defendant has known of and disregarded
21 the excessive risk to the health of prisoners posed by the 3 above-
22 mentioned violations through more than a decade of litigation
23 and failures of this prison to meet court-ordered stipulations
24 in Parsons v Ryan, CV-12-00601-PHX-ROS, an ADC prisoner class-
25 action concerning the provision of medical care in ADCRR
26 prisons. His knowledge by inference is supported by Farmer v
27 Brennan, 511 U.S, 825 (1994) as these very same issues

ADW  4-P

CV-22-00042-PHX-GMS(MTM)

1  have been repeatedly highlighted as "long-standing, pervasive,
2  well-documented and expressly noted" as "so likely to result in
3  violations of constitutional rights that defendants can reasonably
4  be said to be indifferent to the needs" by past administrations and
5  courts.

6      This satisfies the supervisory liability and deliberate indifference
7  requirements under Farmer v Brennan and Blyden v Mancusi,
8  186 F.3d 252, 264 (2d Cir 1999)(a supervisor may be found
9  personally involved in a deprivation of rights in several ways...
10  He may be liable because he created a policy or custom under
11  which unconstitutional practices occurred, or allowed such a
12  policy or custom to continue... He, after learning of the violation
13  through a report or appeal may have failed to remedy the
14  wrong...)

15     Plaintiff alleges that this Defendant knew of the healthcare
16  deficiencies, knew they would be grieved, and knew from
17  numerous Parsons v Ryan reports they would likely be "unprocessed"
18  and allowed the custom to continue.

19     Plaintiff alleges that this Defendant, in not properly training,
20  supervising, or controlling subordinates in the proper
21  processing of grievances, actually allowed and acquiesced to
22  Plaintiff's cries for help obtaining medical care to purposefully
23  go unanswered in an effort to avoid oversight of the ADCRR
24  compliance monitor and the courts. The result is that Plaintiff's
25  cries for help went unanswered for so long that he lost
26  his sight.

27     Plaintiff alleges this was a deliberate and conscious

CV-22-00042-PHX-GMS (MTM)

choice by the Defendant and sufficiently states a claim for Supervisory liability for the denial of medical care due to deliberate indifference.

Discovery will be necessary to ascertain the extent of this defendant's liability. This is supported by Matzker v Herr, 748 F.2d 1142, 1147-48 (7th Cir. 1984)(jail officials liable for holding prisoner for 3 months but refused to provide treatment for injured eye); see also Satchell v Dilworth, 745 F.2d 781, 786 (2d Cir 1984)(supervisors can be named as parties "at least for purposes of identifying those of their subordinates who are personally responsible for the departmental actions complained of); Harvey v LaValley, 2009 WL 5219027 #3 (N.D.N.Y, Dec. 31, 2009)(restating rule permitting inclusion of supervisors as named defendants for discovery purposes after Iqbal.)

Finally, it has been held; "After Iqbal and Twombly, court assessing sufficiency of complaint should ask; if all facts plaintiff alleges in his complaint are accepted as true, but all conclusions are rejected, is it still plausible (that is, more than speculative) to believe that additional discovery will fill in whatever gaps are left in the complaint?" Riley v Vilsack, 665 F. Supp. 2d 994, 2009 U.S. Dist. LEXIS 98548 (W.D, Wis. 2009).

The answer is yes, it is plausible that the that the defendant has failed in his supervisory duties to correct the same deficiencies that have lasted at least 10 years that Plaintiff alleges still exist and led to his loss of sight, and it is plausible that discovery will fill in

ADUX

4-R

15

CV-22-00042-PHX-GMS (MTM)

1 | whatever gaps are left in the complaint.
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

CV-22-00042-PHX-GMS (MTM)

1    Defendant Jane Doe #2 (FHA Doe) holds the supervisory position of Facility
2 Health Administrator, whose responsibilities include administrative oversight of
3 prisoner healthcare which shall include diagnosis, care and treatment, preventative
4 healthcare and education in the areas of physical, mental, dental, environmental
5 health, the training and supervision of subordinates in the remedying of
6 deficiencies of the above, and overall coordination with institutional
7 management to ensure minimal training for recognition of emergency and
8 urgent medical issues are being trained among security personnel.
9 The Facility Health Administrator is also responsible for meeting with and
10 submitting reports of occurrences of medical deficiencies to upper management
11 to include the Deputy Warden and ADCRR compliance monitor. DO 100, 1.1.1-
12 1.1.2; 4.0.

13    Defendant Doe was grossly deficient of responsibilities because she was
14 not aware and should have been aware that medical staff were not
15 processing HNR's, medical complaints, and Emergency (Medical) Grievances as
16 required by DO 802; DO 1100.

17    In this case Plaintiff developed severe eye problems that he
18 submitted (over a period) 12 HNR's and 2 Emergency Grievances requesting
19 medical care and 14 medical complaints and grievances in an effort to
20 receive proper care. The responses to the HNR's were not respond to in a
21 timely manner, forcing Plaintiff to resort to the Medical Grievance
22 process (DI 287, 802.02, 802.05). These grievances were mishandled,
23 "unprocessed" by the FHA's subordinates, even though they were addressed
24 to the FHA per policy (DO 802.05), and even though (DO 802.5.2.1-802.5.2.2.
25 5.5) only allows for a designation of either "resolved" or "not-resolved",
26 This was done in an effort to cut off the (multiple) complaints
27 from reaching upper management and the ADCRR compliance monitor.

FHA    4-T

CV-22-00042-PHX-GMS (MTM)

1   This deliberate indifference resulted in the Plaintiff's
2   loss of one eye (blindness) and irreversible damage to the other
3   (partial blindness).
4       This prison's current history is a pattern and practice
5   by officials to deny necessary medical care in violation of
6   prisoners' Eight Amendment rights and then to obstruct, silence, or
7   "chill" prisoners' First Amendment right to file grievances about
8   that constitutionally deficient healthcare.
9       Defendant FHA Doe does have supervisory liability for failure
10  to adequately train and supervise subordinates under City of Canton
11  v Harris, 489 U.S. 378, 385, 109 S.Ct. 1197 (1989); also Edgerly v
12  City and County of San Francisco, 495 F.3d 645, 660 (9th Cir.
13  2007) holding that supervisors can be held liable for (1.) their own
14  culpable action or inaction in the training, supervision, or control
15  of subordinates; (2) their acquiescence in the constitutional deprivation
16  of which a complaint is made; or (3) for conduct that showed
17  a reckless or callous indifference to the rights of others (citation
18  omitted).
19      As soon as Defendant FHA Doe's subordinates signed their
20  names to the multiple "unprocessing" of medical grievances that
21  were, by policy, to be responded to by the FHA (DO 802.05)
22  they implicated FHA Doe #2 in #1 and #2 above, the failure to
23  train and supervise and the acquiescence in the
24  constitutional deprivations of which a
25  complaint is made.
26
27

4∲4

CV-22-00042-PHX-GMS (MTM)

1. Discovery will be necessary to ascertain the extent of
2. this Defendant's liability. This is supported by <u>Matzker v.</u>
3. <u>Herr</u>, 748 F.2d 1142, 1147-48 (7th Cir 1984) (jail officials liable
4. for holding prisoner for 3 months but refused to provide treatment
5. for injured eye); see also <u>Satchell v. Dilworth</u>, 745 F.2d 781,
6. 786 (2d Cir 1984) (supervisors can be named as parties "at
7. least for purposes of identifying those of their subordinates
8. who are personally responsible for the departmental actions
9. complained of); <u>Harvey v. LaValley</u>, 2009 WL 5219027, *3
10. (N.D.N.Y., Dec. 31, 2009) (restating rule permitting inclusion
11. of supervisors as named defendants for discovery
12. purposes after <u>Iqbal</u>.

13. Finally, it has been held; "after Iqbal and Twombly, court
14. assessing sufficiency of complaint should ask; if all facts plaintiff
15. alleges in his complaint are accepted as true, but all conclusions
16. are rejected, is it still plausible (that is, more than speculative) to
17. believe that additional discovery will fill in whatever gaps are left in
18. the complaint? <u>Riley v. Vilsack</u>, 665 F.Supp. 2d 994, 2009 U.S. Dist.
19. LEXIS 98548 (W.D. Wis 2009).

20. The answer is yes, it is plausible that after more than 10
21. years of failures to meet constitutional standards, the defendant
22. still continues to fail to correct those deficiencies and that
23. those failures cost plaintiff his sight; and it is plausible that
24. discovery will fill in the gaps left in the complaint.

FHA

<u>Supervisory Liability for the Denial of Medical Care</u>

Defendant Doe #3 holds the supervisory position of Director of Nursing (DON), whose responsibilities include administrative oversight of the nursing department and training and supervision of their daily activities.

Of the areas the DON trains and supervises, the most important are the proper triage and processing of Health Needs Requests, investigation of medical grievances, and general coordination of all specialist appointments.

Finally, the DON is responsible for general oversight of correctional procedures of medical deficiencies, once reported, to ensure they do not reoccur. Do 100, U.S.CA.B This means the DON is responsible to ensure provision of constitutionally adequate healthcare. <u>Estelle v Gamble</u>, 429 U.S. 97, 97 S.Ct 285 (1976); U.S.CAB

Defendant Doe #3 failed to affirmatively supervise subordinates as they trained and supervised their subordinates to properly triage and screen HNR's, respond to medical complaints, and schedule specialist appointments, and provide uninterrupted supply of Plaintiff's medications.

Because of this failure, Plaintiff's medical requests were not triaged properly, his grievances "unprocessed", and his medications allowed to repeatedly lapse.

This, Plaintiff alleges, was a deliberate and conscious choice not to properly supervise or control the Director of Nursing's subordinates

CV-22-00042-PHX-GMS (MTM)

in the proper triage of HNR's, proper processing of Medical complaints, and the proper scheduling of off-site appointments, to avoid oversight of supervisors, the ADCRR compliance monitor, and the courts.

This prison's current history has been documented and expressly noted as a pattern and and practice by officials to deny medical care in violation of prisoners' Eighth Amendment rights, and then to obstruct, silence or "chill" prisoners' First Amendment right to file grievances about that constitutionally deficient healthcare through retaliatory actions and by "unprocessing" grievances in violation of DO 802.5.2.1-802.5.2.2.5, which only allows for a designation of either "resolved" or "unresolved," done in efforts to cut off the complaints from reaching upper management and the ADCRR compliance monitor.

Plaintiff alleges that these are not isolated occurrances. They are long-standing and pervasive, deliberate and conscious choices to inflict wanton and unnecessary pain.

Plaintiff alleges that the Defendant has known of and disregarded the excessive risk to the health of prisoners posed by the 3 above-mentioned violations through more than a decade of litigation and failures of this to meet court-ordered stipulations in Parsons v Ryan, CV-12-00601-PHX-ROS, an ADC prisoner class-action concerning the provision of medical care in ADCRR prisons. Defendant's knowledge by inference is supported by Farmer v Brennan, 511 U.S. 825 (1994) as these very same issues have repeatedly been highlighted as "long-standing, pervasive, well-documented and expressly noted" as "so likely to result in

CV-22-00042-PHX-GMS (MTM)

1 violations of constitutional rights that defendants can reasonably
2 be said to be indifferent to the need" for more or different
3 training, supervision, and control of subordinates by past
4 administrations and courts.

5   This satisfies the supervisory liability and deliberate
6 indifference requirements under Farmer v Brennan and
7 Blyden v Mancusi, 186 F.3d 252, 264 (2d Cir 1999) (a supervisor
8 may be found personally involved in a deprivation of rights in
9 several ways... He may be liable because he created a policy or
10 custom under which unconstitutional practices occurred, or allowed
11 such a policy or custom to continue... He, after learning of the
12 violation through a report or appeal may have failed to
13 remedy the wrong...)

14   Plaintiff alleges this Defendant knew of the healthcare
15 deficiencies, knew they would be grieved, and knew from
16 numerous Parsons v Ryan reports they would likely be "unprocessed"
17 and allowed the custom to continue.

18   Plaintiff alleges that this Defendant, in not properly training,
19 supervising, or controlling subordinates in the proper processing
20 of medical complaints, actually allowed and acquesced to
21 Plaintiff cries for help obtaining medical care to purposefully
22 go unanswered in an effort to avoid oversight of the ADCRR
23 compliance monitor and the courts. The result is that Plaintiff's
24 cries for help went unanswered for so long he lost his sight.

25   Plaintiff alleges these were a series of deliberate and conscious
26 choices by the Defendant and sufficiently states a claim
27 for supervisory liability for the denial of medical care due

DON   M-Y

CV-22-00042-PHX-GMS (MTM)

1  to deliberate indifference.

2     Discovery will be necessary to ascertain the extent of
3  this defendant's liability. This is supported by <u>Matzker v</u>
4  <u>Herr</u>, 748 F.2d 1142, 1147-48 (7th Cir. 1984)(jail officials liable
5  for holding prisoner for 3 months but refused to provide
6  treatment for injured eye); see also <u>Satchell v Dilworth</u>,
7  745 F.2d 781, 786 (2d Cir. 1984) (supervisors can be named
8  as parties "at least for purposes of identifying those of
9  their subordinates who are personally responsible for the
10 departmental actions complained of'); <u>Harvey v LaValley</u>,
11 2009 WL 5219027, *3 (N.D.N.Y., Dec. 31, 2009)(restating
12 rule permitting inclusion of supervisors as named
13 defendants for discovery purposes after <u>Iqbal</u>.)

14    Finally, it has been held; "After <u>Iqbal</u> and <u>Twombly</u>, court
15 assessing sufficiency of complaint should ask: if all facts
16 plaintiff alleges in his complaint are accepted as true, but all
17 conclusions are rejected, is it still plausible (that is, more
18 than speculative) to <u>believe</u> that additional discovery
19 will fill in whatever gaps are left in the complaint?"
20 <u>Riley v Vilsack</u>, 665 F. Supp. 2d 994, 2009 U.S. Dist.
21 LEXIS 98548 (W.D. Wis. 2009)

22    The answer is yes, it is plausible that the defendant
23 has failed in his supervisory duties to correct the
24 same deficiencies of the last 10 years that plaintiff
25 alleges still exist and led to his loss of sight, and
26 discovery will fill in the gaps in the complaint.

27

DON    H-2

CV-22-00042-PHX-GMS (MTM)

1  Defendant Doe #4 holds the position of Assistant Director
2  of nursing, whose responsibilities include administrative
3  oversight of the nursing department, training, supervision,
4  and control of subordinates, including proper triage and
5  screening of Health Needs Requests (HNR's) in a timely and
6  appropriate manner, scheduling and coordination of specialist
7  care, and reporting non-compliance issues to the DON and
8  FHA.

9     Defendant Doe #4 was grossly deficient of her
10  responsibilities because either she was not aware and
11  should have been or was aware and was complicit
12  that her subordinates were not appropriately triaging,
13  processing, and scheduling appointments for Plaintiff's
14  HNR's, medical complaints and grievances, and Emergency
15  Grievances as required by DO 802, DO 1100, DO 100, and
16  U.S.CA. B.

17    In this case Plaintiff was denied eye medication,
18  developed a severe eye infection, suffered an exploded
19  optic nerve that rendered him blind, all while his
20  HNR's, medical complaints and grievances went
21  unanswered for months on end. His medical
22  grievances were "unprocessed" in violation of DO 802.5.
23  2.1 - 802.5.2.2.5 which allows only for a designation
24  of either "resolved" or "unresolved", in an effort
25  to cut off the complaints about the lack of medical
26  care from reaching upper management and the ADCRR
27  Compliance monitor. This deliberate indifference caused Plaintiff's

(4)-AA

CV-22-00042-PHX-GMS (MTM)

1  blindness in one eye and harmed his remaing eye
2  (partial blindness).
3   This prison's current history is a pattern of and
4  practice by officials to deny necessary and adequate
5  medical care for serious medical needs in violation of
6  prisoners' Eighth Amendment rights and then to obstruct,
7  silence, or "chill" prisoners' First Amendment right to file
8  grievances about that constitutionally deficient healthcare
9  which has been most recently evidenced by ADCRR's
10 failure to meet court-ordered stipulations and the
11 resulting resumption of <u>Parsons v Ryan</u> litigation.
12  Defendant Doe #4 does have supervisory liability for
13 failure to adequately train and supervise subordinates
14 under <u>City of Canton v Harris</u>, 489 U.S. 378, 385, 109 S. Ct
15 1197 (1989) ; also <u>Edgerly v City and County of San</u>
16 <u>Francisco</u>, 495 F.3d 645, 660 (9th Cir 2007) that supervisors
17 can be held liable for (1) their own culpable action or
18 inaction in the training, supervision, or control of
19 subordinates; (2) their acquiescence in the constitutional
20 deprivation of which a complaint is made; or (3) for
21 conduct that showed a reckless or callous indifference to
22 the rights of others (citation omitted).
23  Discovery will be necessary to ascertain the extent of
24 Defendant Doe's actions or inactions in the training,
25 supervision, or control of subordinates on the issue
26 of why so many HNR's and grievances requesting
27 medical care went unanswered. This is supported by

(4-BB)

CV-22-00042-PHX-GMS (MTM)

1  Matzker v Herr, 748 F. 2d 1142, 1147-48 (7th Cir 1984) (jail
2  officials liable for holding prisoner for 3 months but refused
3  to provide treatment for injured eye); see also Satchell v
4  Dilworth, 745 F. 2d 781, 786 (2d Cir 1984) (supervisors can be
5  named as parties "at least for purposes of identifying those
6  of their subordinates who are personally responsible for
7  the departmental actions complained of]; Harvey v LaValley,
8  2009 WL 5219027, *3 (N.D.N.Y., Dec. 3, 2009) (restating rule
9  permitting inclusion of supervisors as named defendants for
10 discovery purposes after Iqbal.

11      Discovery will reveal that these are not isolated
12 occurrances, that this prison's current history is documented
13 and expressly noted as a pattern and practice by officials
14 to deny medical care in violation of prisoners' Eighth
15 Amendment rights, and then to obstruct, silence, or "chill"
16 prisoners' First Amendment right to file grievances about
17 that constitutionally deficient healthcare through retaliatory
18 actions and the aforementioned "unprocessing" of valid complaints

19      Finally, it has been held; "After Iqbal and Twombly court
20 assessing sufficiency of complaint should ask: if all facts
21 Plaintiff alleges are accepted as true, but all conclusions are
22 rejected, is it still plausible (that is, more than speculative) to
23 believe that additional discovery will fill in whatever gaps
24 are left in the complaint.?" Riley v Vilsack, 665 F. Supp. 2d
25 994, 2009 U.S. Dist. LEXIS 98548 (W.D. Wis. 2009)
26      The answer is yes, in this case, discovery will fill in
27 whatever gaps are left in the complaint.

CV-2200042-PHX-GMS (MTM)

1   Defendant Gay holds the position of provider of
2   medical care for prisoners at SMU1. She is responsible
3   for the diagnosis and treatment of medical needs.
4      She is also responsible for reordering medications and
5   ensuring prisoners are provided with constitutionally
6   adequate medical care. DO 100, DO 1100, U.S. CA8, Estelle v
7   Gamble, 429 U.S. 97, 97 S.Ct. 285 (1976)
8      Defendant Gay failed in her responsibilities to
9   Plaintiff by failing to ensure his medication was not
10  interrupted. Due to this failure Plaintiff's eye condition
11  worsened and the resulting infection was allowed
12  to run rampant as his requests for medical attention
13  was ignored by Defendant Gay. Defendant Gay failed
14  to see Plaintiff within policy guidelines, taking 6 months
15  to see him when guidelines call for 2 weeks. Due to
16  this constitutional violation Plaintiff is now blind.
17     This, the plaintiff alleges, was a deliberate and conscious
18  choice to not see every prisoner for every HNR, but
19  instead to wait until they had submitted multiple
20  HNR's to schedule the first visit. Plaintiff alleges
21  this was done as a cost-cutting measure, and that
22  discovery will bear out an unofficial custom of the
23  aforementioned HNR scheduling practices.
24     This prison's current history has been documented and
25  expressly noted as a pattern and practice by officials
26  to deny medical care in violation of prisoners'
27  Eighth Amendment rights. It has also been noted to

(M.-DD)

CV-22-00042-PHX-GMS (MTM)

1  "adjust" HNR reporting numbers to avoid oversight by the
2  ADCRR compliance monitor and the courts.
3      Plaintiff alleges that these are not isolated occurrances
4  They are long-standing and pervasive, deliberate and
5  conscious choices to limit costs. The result of these choices
6  are the infliction of wanton and unnecessary pain.
7      Plaintiff alleges that Defendant Gay has known of and
8  disregarded the excessive risk to prisoners posed by these
9  practices, and discovery will bear this out.
10      Defendant's knowledge is direct, a result of being near
11  the center of nearly 10 years' litigation highlighting these
12  very risks, and a result of being a defendant herself in
13  other litigatory actions for these very same practices.
14      Defendant's knowledge by inference is supported by
15  Farmer v Brennan, 511 U.S. 825 (1994) as "long-standing,
16  pervasive and well documented violations of constitutional
17  rights that are so obvious that defendants can
18  reasonably be said to be" deliberately indifferent to the
19  needs of the prisoner population.
20      Defendant Gay was deliberately indifferent to Plaintiff's
21  cries for help when she allowed 6 months to pass
22  without seeing him for his eye infection, despite multiple
23  requests submitted by the Plaintiff, and when she repeatedly
24  allowed the provision of his eye medication to lapse, resulting
25  in the eye infection. In doing so Defendant Gay violated
26  Plaintiff's Eighth Amendment rights by denying him medical care,
27  and subjected him to cruel and unusual punishment.

MEE

CV-22-00042-PHX-GMS (MTM)

1   Defendant Merriman holds the position of provider of
2   medical care for prisoners at SMU 1. She is responsible for
3   the diagnosis and treatment of medical needs, reordering medications
4   and ensuring prisoners are provided with constitutionally adequate
5   medical care. DO 100, DO 1100, U.S.C.A. 8, _Estelle v Gamble_, 429
6   U.S. 97, 97 S.Ct 285 (1976)

7        Defendant Merriman failed in her responsibilities to
8   Plaintiff by allowing his eye medication to lapse and then
9   being negligent in ordering his refills so there would be
10  no lapse. This caused an infection in his eye that
11  resulted in his blindness.

12       Defendant Merriman then failed to see Plaintiff in
13  response to his HNR's within the timeframes allowable
14  by policy, thus needlessly extending Plaintiff's pain and
15  suffering.

16       Plaintiff alleges these were deliberate and conscious
17  choices made in an effort to cut costs, and that discovery
18  will bear this out.

19       This prison's current history has been documented and
20  expressly noted as a pattern and practice by officials
21  to deny medical care in violation of prisoners' Eighth
22  Amendment rights. It has also been noted to "adjust"
23  medical deficiency numbers to avoid oversight by the
24  ADCRR compliance monitor and the courts.

25       Plaintiff alleges that these are not isolated
26  occurrences. They are long-standing and pervasive,
27  deliberate and conscious choices to limit costs. The

(H).FF

CV-22-00042-PHX-GMS (MTM)

1  result of these choices, for the Plaintiff was the infliction
2  of wanton and unnecessary pain.
3    Plaintiff alleges that Defendant Merriman has known of and
4  disregarded the excessive risk to prisoners posed by these
5  practices and discovery will also bear this out.
6    Defendant's knowledge is a direct result of being at
7  the center of numerous controversies and litigation
8  actions for these very same practices.
9    Defendant's knowledge can also be said to be by
10  inference, supported by Farmer v Brennan, 511 U.S. 825 (1994) as
11  long-standing, pervasive and well-documented violations of
12  constitutional rights that are so obvious that defendants can
13  reasonably be said to be deliberately indifferent to the needs
14  of the prisoner population.
15    Defendant Merriman was deliberately indifferent to
16  Plaintiff's cries for help when she did not see him
17  until 6 months after his request, and by allowing his
18  medications to repeatedly lapse without refill.
19  In doing so, Defendant Merriman violated Plaintiff's
20  Eighth Amendment rights by denying him medical
21  care and subjecting him to cruel and unusual
22  punishment.
23
24
25
26
27

CV-22-00042-PHX-GMS (MTM)

1  Officer John Doe #5 is a corrections officer at
2  SMU 1 whose responsibilities on or about April
3  29, 2019, was solely escorting prisoners to medical
4  unit.
5    Defendant Doe #5, instead of attempting to bring
6  Plaintiff to medical on that day, fraudulently claimed
7  Plaintiff was refusing to go to medical and signed
8  a form in Plaintiff's name indicating so.
9    In forging this document, Defendant Doe #5 denied
10 Plaintiff the medical care for his eye infection he
11 had been requesting for more than a month.
12   Because of this, Plaintiff eye infection worsened
13 due to lack of treatment and he eventually lost
14 his sight.
15   Officer John Doe #5 violated plaintiff's Eighth
16 Amendment rights by denying him medical care and
17 subjecting him to cruel and unusual punishment.
18   This is not an isolated incident. This has been the
19 subject of many complaints, grievances, and litigation
20 going as far back as 10 years. Discovery will bear
21 out that this has been a long-standing and expressly
22 noted repeated occurrences and Defendant Doe #5, having
23 been advised of this in numerous meetings knew of and
24 disregarded the excessive risk to prisoners posed by this
25 practice.
26
27

(4-HH)

CV-22-00042-PHX-GMS (MTM)

1. <u>Supervisory Liability for the Denial of Medical Care</u>
2. Defendant Dison holds the supervisory position of
3. Grievance Coordinator. Her personal responsibilities include
4. the administrative oversight of the grievance
5. department and training, supervising, and controlling
6. grievance officers to ensure complaints and grievances
7. are assigned a case number and are forwarded to
8. the appropriate party (DO 802; U.S.C.A. 8 ; <u>Lewis v Casey</u>,
9. 518 U.S. 343, 355, 116 S. Ct. 2174 (1996). She does this
10. by personally training grievance officers in how to
11. respond to and properly process complaints and
12. grievances of all types, supervising and controlling
13. grievance staff to ensure compliance with ADCRR
14. policy, state and federal law.
15. Defendant Dison was grossly deficient of her
16. responsibilities because he was not aware but should have
17. been or was complicit in grievance staff not processing
18. complaints and grievances as required by DO 802, state
19. and federal law, and that these long-standing pervasive
20. and expressly-noted deficiencies (revealed over 10 years
21. of <u>Parsons v Ryan</u> litigation) were adversly affecting
22. other areas of prison life, such as the denial of
23. medical care, as a result.
24. The grievance staff knew of these deficiencies
25. through more than 10 years of litigation, but their "knowledge
26. by inference" is supported by <u>Farmer v Brennan</u>, 511 U.S.
27. 825 (1994) because these very same issues have

Grievance    **4-11**

CV-22-00042-PHX-GMS (MTM)

1. been repeatedly highlighted in multiple civil rights
2. lawsuits.
3.      In spite of the presence of subordinate
4. grievance staff the Grievance Coordinator, as
5. supervisor, is ultimately responsible to ensure their
6. work is constitutionally adequate (Lewis; Hudson).
7.      The grievance staff were grossly negligent because
8. the complaints and grievances were (1) forwarded to
9. the wrong personnel; not processed (ie, 2 emergency
10. grievances were refused processing outright); (3) not
11. responded to at all or not responded to in a timely manner;
12. or (4) ultimately designated as "unprocessed" to cut off
13. the complaints from reaching upper management (in
14. violation of DO 802.5.2.1-802.5.2.2.5 which grants
15. either "resolved" or "not resolved" as options available
16. to the grievance staff.
17.      Defendant Dison does have supervisory liability
18. for failure to adequately train, supervise, and control
19. subordinates under City of Canton v Harris, 489 U.S. 378,
20. 389 109 S.Ct 1197 (1988); also Edgerly v City and County
21. of San Franciso, 495 F.3d 645, 660 (9ᵗʰ Cir 2007) that
22. supervisors can be held liable for (1) their own culpable
23. action or inaction in the training, supervision, or control
24. of subordinates; (2) their acquiescence in the constitutional
25. deprivation of which a complaint is made; or (3) for
26. conduct that showed a reckless or callous
27. indifference to the rights of others (citation omitted)

Grievance **N.)-JJ**

CV-22-00042-PHX-GMS (MTM)

1. As soon as Defendant Dixon "unprocessed" medical
2. grievances that were not under her authority to handle
3. she implicated herself. When her grievance staff
4. repeatedly followed suit, they implicated her as well,
5. establishing 1st and 8th Amendment violations.
6. This prison's current history has been documented
7. and expressly noted as a pattern and practice by officials
8. to deny medical care in violation of prisoners' 8th Amendment
9. rights, and then to obstruct, silence, or "chill" prisoners
10. 1st Amendment rights to file grievances about that
11. constitutionally deficient healthcare through retaliatory
12. actions.
13. Plaintiff alleges that these are not isolated occurrences,
14. They are long-standing and pervasive, deliberate and
15. conscious choices to inflict wanton and unnecessary
16. pain.
17. Plaintiff alleges that Defendant has known of and
18. disregarded the excessive risk to the health of
19. prisoners posed by mishandling medical complaints
20. and grievances through more than a decade of
21. litigation and failures of this prison to meet court-
22. ordered stipulations in <u>Parsons v Ryan</u>, CV-12-00601-
23. PHX-Ros, an ADC prisoner class-action concerning the
24. provision of medical care in ADCRR prisons. Her know-
25. ledge by inference is supported by <u>Farmer v Brennan</u>,
26. 511 U.S. 825 (1994) as these very same issues have
27. been repeatedly highlighted as "long-standing, pervasive,

CV-22-00042-PHX-GMS (MTM)

1  well-documented and expressly noted as "so likely to result
2  in violations of constitutional rights" that the defendant
3  "can reasonably be said to be indifferent to the need" for more
4  or different training. Less than 15 percent of medical complaints
5  and grievances are processed according to policy, delaying much
6  needed medical aid, due to the deliberate indifference of
7  grievance staff and the lack of training, supervision, and
8  control of grievance staff.
9      This satisfies the supervisory liability and deliberate
10 indifference requirements under <u>Farmer v Brennan</u> and
11 <u>Blyden v Mancusi</u>, 186 F. 3d 252, 264 (2d Cir 1999) (a
12 supervisor may be found personally involved in a deprivation
13 of rights in several ways... He may be liable because
14 he created a policy or custom under which
15 unconstitutional practices occurred, or allowed such a
16 policy or custom to continue... He, after learning of the
17 violation through a report or appeal may have failed to
18 remedy the wrong...)
19     Plaintiff alleges that the defendant knew of the
20 grievance policy deficiencies, that the grievances would
21 be designated "unprocessed" from multiple <u>Parsons v Ryan</u>
22 reports, and also knew from those same reports that this
23 action would adversely affect the provision of constitutionally
24 adequate healthcare, and yet the defendant not only allowed
25 the custom to continue but personally participated in it by
26 "unprocessing" medical grievances herself.
27     This is a deliberate, conscious choice that actually

CV-22-00042-PHX-GMS(MTM)

1  allowed Plaintiff's cries for help for obtaining medical care
2  to purposefully go unanswered for so long that it resulted in
3  the loss of his sight.
4       Plaintiff that these deliberate and conscious choices
5  by the Grievance Coordinator sufficiently states a claim for
6  supervisory liability for the denial of medical care due
7  to deliberate indifference.
8       Discovery will be necessary to ascertain this defendants
9  extent of liability. This is supported by <u>Matzker v Herr</u>,
10 748 F.2d 1142, 1147-48 (7th Cir 1984)(jail officials liable for
11 holding prisoner for 3 months but refused to provide treatment
12 for injured eye); see also <u>Satchell v Dilworth</u>, 745 F.2d
13 781, 786 (2d Cir 1984)(supervisors can be named as parties
14 "at least for purposes of identifying those of their
15 subordinates who are personally responsible for the
16 departmental actions complained of"); <u>Harvey v LaValley</u>,
17 2009 WL 5219027, *3 (N.D.N.Y., Dec. 31, 2009)(restating
18 rule permitting inclusion of supervisors as named
19 defendants for discovery purposes after <u>Iqbal</u>.
20      Finally, it has been held: "After <u>Iqbal</u> and <u>Twombly</u>,
21 court assessing sufficiency of complaint should ask:
22 if all facts Plaintiff alleges in his complaint are
23 accepted as true, but all conclusions are rejected,
24 is it still plausible (that is, more than speculation)
25 to believe that additional discovery will fill in
26 whatever gaps are left in the complaint?" <u>Riley v</u>
27 <u>Vilsack</u>, 665 F. Supp. 2d 994, 2009 U.S. Dist. LEXIS

CV-22-00042-PHX-GMS (MTM)

1  98548 (W.D. Wis 2009)
2      The answer is yes, it is plausible that defendant
3  failed in his supervisory duties to correct the same
4  constitutional deficiencies that have plagued this
5  prison for the last 10 years and that Plaintiff
6  alleges still exist and cost him his right. Yes, it is
7  plausible that additional discovery will help fill in
8  the gaps left in this complaint.
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Grievance

## E.   REQUEST FOR RELIEF

State the relief you are seeking:

A. Declare the actions and inactions described herein violated Plaintiff's rights under the Constitution and the laws of the United States;
B. Order Defendants to pay compensatory damages of $5,000,000.00 (5 Million dollars) and punitive damages of $5,000,000.00 (5 Million dollars) according to this Court's findings of liability;
C. Order Defendants to pay reasonable attorneys fees and costs;
D. Other just and equitable relief that this Court deems necessary.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___March - 8 . 2022___
                          DATE

X _____
                          SIGNATURE OF PLAINTIFF

_____
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

_____
(Signature of attorney, if any)

_____
(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form.   If you need more space, you may attach no more than fifteen additional pages.   But the form must be completely filled in to the extent applicable. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.

6

1. Shaun Andrew Peterson #298007
2. ASPC Eyman Complex/Meadows Unit
3. PO Box 3300
4. Florence, Arizona 85132
5.
6. # UNITED STATES DISTRICT COURT
7. ## DISTRICT OF ARIZONA
8.
9. Shaun Andrew Peterson,           CV-22-00042-PHX-GMS (MTM)
10. Plaintiff                        CHIEF JUDGE G. MURRAY SNOW
11. v                                AFFIDAVIT IN SUPPORT OF MOTION TO
12. David Shinn, et al,              ALTER, AMEND, OR RECONSIDER
13. Defendants
14.
15. ## AFFIDAVIT OF SHAUN PETERSON
16.
17. I, Shaun Peterson, affirm under penalty of perjury:
18.
19.    1. I am the plaintiff in the above-numbered
20. case, currently pending in the United States District
21. Court for the District of Arizona.
22.
23.    2. I am pro per
24.
25.    3. I have lost complete sight in one eye and
26. suffered irreparable damage to the other. I am
27. legally blind. Eyeglasses cannot correct my sight

AFFIDAVIT SP        (1.)

CV-22-00042-PHX-GMS (MTM)

1. well enough to read with my damaged eye.

3. 4. I go to the prison legal resource center when I
4. can to learn how to properly fill out this civil suit
5. complaint but I cannot see well enough to read the
6. books.

8. 5. I must use someone else to write for me.

10. 6. Because we keep having COVID outbreaks, we are
11. quarantined from other prisoners often. This means
12. I do not have access to other prisoners trained in
13. the law to help correct errors.

15. 7. The contract paralegal is not meeting face-to-face
16. anymore. Everything must be explained over the telephone
17. now without being able to take or read notes.

19. 8. The United States Court of Appeals for the Ninth
20. Circuit has instructed, courts must "continue to construe
21. pro se filings liberally." Hebbe v Pliler, 627 F.3d 338,
22. 342 (9th Cir 2010) See also Erickson v Pardus, 551 U.S. 89,
23. 94 (2007). How much more so for a blind prisoner
24. litigating essentially on his own.

26. 9. This case rests heavily on post-label findings allowing
27. inclusion of supervisors, for discovery purposes in

AFFIDAVIT SP (2.)

CV-22-00042-PHX-GMS(MTM)

1. Harvey v LaValley, 2009 WL 5219027, *3 (N.D.N.Y., Dec. 31,
2. 2009) and Riley v Vilsack, 665 F. Supp. 2d 994,
3. 2009 U.S. Dist. LEXIS 98548 (W.D. Wis. 2009). It is not
4. a "fishing expedition." I believe discovery will aid me in
5. proving every allegation in this complaint.
6.
7.    10. I will need this Court's forebearance to do so, because
8. I cannot get all the procedures and formats exactly
9. right because I cannot read the legal resource library
10. books.
11.
12.
13.
14.
15.
16.    State of Arizona
    County of Pinal
17.    Subscribed and sworn/affirmed before me this 24
    day of FEB , 20 22
18.    By SHAUN ANDREW PETERSON
19.        (Name of Signer)
20.    
    JOSEPH C. MAINHALL
    Notary Public - State of Arizona    Notary Public
21.    PINAL COUNTY
    Commission # 612193
22.    Expires September 18, 2025
23.
24.
25.
26.
27.

AFFIDAVIT JP   (3)